FILED

2008 Sep-12  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SHARONE S. BALENTINE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:07-CV-01175-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Sharone S. Balentine brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), seeking judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

## I.     Procedural History

Plaintiff filed her application for disability insurance benefits on November 26, 2002 (Tr. 18, 77-80), alleging a disability onset date of January 24, 2002. (Tr. 19, 78). Plaintiff's claim was denied initially, and she then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 18, 58). Plaintiff's case was heard by ALJ G. Wade Green on June 7, 2004. (Tr. 449-63). In his August 24, 2004 decision, ALJ Green determined that Plaintiff was not eligible for disability insurance benefits because she failed to meet the disability requirements of the Act and retained the

residual functional capacity ("RFC") to perform sedentary work with restrictions.  (Tr. 45-49). Plaintiff filed a request for review of the ALJ's decision on October 22, 2004, and the Appeals Council granted the request under 20 C.F.R. 404.970(a)(3), the substantial evidence provision of the Social Security Administration regulations. (Tr. 40, 69-70).  The Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  (Tr. 69-70).  A second hearing was held on Plaintiff's behalf before another ALJ, Earl C. Cates, on February 10, 2006.  (Tr. 464-97).  ALJ Cates denied disability benefits to Plaintiff on March 28, 2006, finding that she had the severe impairments of mild degenerative disc disease and morbid obesity and that she could perform a significant range of sedentary and light work.  (Tr. 18-31).

The Appeals Council denied Plaintiff's request for review of ALJ Cates' decision on April 25, 2007.  (Tr. 7-9).  The ALJ's decision then became the final decision of the Commissioner, and therefore a proper subject of this court's review.

Plaintiff was born on March 8, 1969 (Tr. 78) and has a high school education.  (Tr. 115).  She previously worked as a cook, certified nursing assistant, sawhand and laborer.  (Tr. 130).  Her last job was as a house parent at a Group Home from March 2001 to December 2001.  (*Id.*).  Plaintiff alleges that she has been unable to engage in substantial gainful activity since January 24, 2002 due to rotoscoliosis of the lumbar spine.  (Tr. 19).

Plaintiff's relevant medical history begins in June 2000, when she slipped and fell on the job while working as a nursing assistant and landed on her buttocks.  (Tr. 20, 46, 130, 175).  Plaintiff began seeing Dr. Lowery a few weeks after the accident, reporting increasing lumbar and tailbone pain and difficulty sitting for any length of time.  (Tr. 20, 175).  X-rays of the lumbosacral coccyx area revealed "normal curvature with a normal appearing coccyx and well maintained disk spaces."

(Tr. 175). At his initial evaluation, Dr. Lowery encouraged Plaintiff to be "very active," but noted that she may need help with heavy lifting, and gave her a prognosis of "good." (*Id.*). A November 2000 MRI showed a slight loss of water at the L4-L5 disk with a right bulge that did not appear to be impinging on any nerve or nerve roots, and there was no evidence of any herniated material. The diagnosis was continued lumbar pain without any surgical lesion. (Tr. 170). In January 2001, Dr. Lowery again noted that it was "important for [Plaintiff] to increase her activities" and recommended Plaintiff begin physical therapy. (Tr. 167). Dr. Lowery repeatedly observed that both exercise and physical therapy were vital to Plaintiff's health. (Tr. 162, 165, 166).

Plaintiff's physician, Dr. Swain, referred her to Dr. Sharp, whom she saw on March 1, 2001 for an orthopaedic evaluation of low back pain. (Tr. 20, 161). X-rays showed normal alignment of her spine without any evidence of fracture, bone tumor, or soft tissue mass. Dr. Sharp indicated that he could not find any neurologic deficits to suggest nerve root impingement, and Plaintiff appeared to have chronic lumbar strain. Plaintiff was treated with a Medrol Dosepak steroid and a home exercise program. (Tr. 20, 160-61).

Plaintiff returned to Dr. Lowery on March 13, 2002 after not having seen him for a year. (Tr. 164). An MRI of the lumbar spine performed on March 14, 2002 revealed mild L4-5 disk desiccation with generalized annular bulge, and there was no evidence of left-sided lateralizing process. (Tr. 163). A week later, on March 20, 2002, Plaintiff reported that she was "considerably better," that the left leg symptoms were "all but resolved" and there were no new symptoms. (Tr. 162). Dr. Lowery stated that there was "really nothing else [he] could offer her." (*Id.*). He reported that "[t]his is something that should get better with time and no further intervention, other than a good solid exercise program, is warranted." (*Id.*).

Plaintiff saw Dr. Lowman, a chiropractor, for numerous routine visits between February 22 and April 1, 2002 for treatment of her low back and neck pain. (Tr. 178-87). Dr. Lowman's reports reflect abnormal findings including scoliosis, a subluxation at C5, wedging of disc spaces at C3-4, and intervertebral disc thinning at the L5 area. (Tr. 186). In a Disability Determination report completed by Dr. Lowman in January 2003, he wrote, "Prognosis is good. The last time patient was seen in my office she was much improved. I feel that patient could make a complete recovery if she continued her treatment." (Tr. 177).

On May 31, 2002 Plaintiff saw Dr. Ghavam for further evaluation of her ongoing back and leg pain. (Tr. 191). Dr. Ghavam noted that Plaintiff's back pain was the most problematic, and that standing seems to worsen the pain. He recorded that Plaintiff weighed 311 pounds and was 5'7" tall. He reported that she had therapy for two weeks which helped "to some extent," and also that she had benefitted some from anti-inflammatories. He recommended more physical therapy, a home exercise program, and weight loss. (*Id.*).

Plaintiff underwent physical therapy at Encore Rehabilitation about thirteen times from June 12, 2002 to August 13, 2002. (Tr. 21, 192-22). She was discharged after cancelling or failing to show at four consecutive appointments. (Tr. 192, 195-97). On her discharge summary, Plaintiff was reported as still having pain, but that she had made at least partial progress in several areas, including decrease of pain, increased strength, and improved function. (Tr. 192). Her compliance with the program was marked as "fair." (*Id.*).

Dr. Gill performed a consultative disability evaluation of Plaintiff on March 4, 2003. (Tr. 286-88). He reported a positive musculoskeletal exam, finding that Plaintiff walked unassisted, had normal gait, moved with a full range of motion in the joints, and had a good squatting ability. (Tr.

4

287).  He also did not report any negative neurological findings.  (*Id.*).  He listed that Plaintiff was not taking any medications at the time.  (*Id.*).  He concluded that Plaintiff's primary problem was chronic low back pain and that she had a history of mild degenerative disc disease, "no doubt complicated by her morbid obesity." (Tr. 288).  He noted that he found "little in the way of objective abnormalities."  (*Id.*).  He also noted that she would have some limitations and could probably not tolerate frequent bending, stooping, squatting or heavy lifting, but that he saw no reason why she could not function in a sedentary position and get up and down occasionally.  He observed that she could stand and walk for intermittent periods.  (*Id.*).

On May 13, 2003 Plaintiff was admitted for one night to Parkway Medical Center Hospital for chest tightness.  (Tr. 297-316).  Two weeks later, Plaintiff had a normal cardiac catheterization performed by Dr. Cheng, which revealed normal coronary arteries and normal left ventricular systolic function. (Tr. 430-32).  In July 2003, Plaintiff received lumbar epidural steroid injections for lumbar radiculopathy from Dr. Mark Murphy.  (Tr. 321-36).  Dr. Murphy continued to see Plaintiff for spasms in her lower back and he eventually diagnosed low back pain and degenerative disk disease.  (Tr. 22, 348-56).

Plaintiff saw Dr. Gregory Cheatham starting in February 2004 for persistent chest pain.  (Tr. 338-42; 400-16).  In his notes from Plaintiff's March 25, 2004 visit, Dr. Cheatham reported informing Plaintiff that she has hyptertension and discussed with her the importance of taking blood pressure medications, but she refused to take them.  (Tr. 340).  His diagnoses included shortness of breath, chest pain, fatigue, and hypertension.  (Tr. 338-42).

From October 2004 to April 2005, Plaintiff saw Dr. Greg Millar for numerous routine visits for treatment of lower back and neck pain.  (Tr. 434-42).  On April 4, 2005, Dr. Millar reported that

Plaintiff was progressing as expected, though her problems were of a permanent nature and she would probably have ongoing pain for the rest of her life. (Tr. 434). Plaintiff was admitted to the emergency room of Decatur General Hospital on July 9, 2005 for chest pain. (Tr. 22, 375-83). Chest x-rays revealed no evidence of acute disease and Plaintiff's EKG showed normal sinus rhythm. The diagnosis was acute chest wall pain. (Tr. 22, 378).

Plaintiff saw Dr. Ghavam on July 19, 2005 with complaints of low back and right leg pain and neck and right arm pain. (Tr. 385-86). Dr. Ghavam's notes indicate that Plaintiff had been receiving chiropractic treatment, physical therapy, and epidural steroid injections, "[a]ll of which provide only temporary relief." (Tr. 385). Lortab is the only medication listed. Upon examination, Plaintiff had full range of motion throughout her shoulder, elbow, wrists, hip, knee ankle and neck, though she was tender at the lumbar spine as well as the right shoulder. (*Id.*). An MRI of Plaintiff's cervical spine showed mild degenerative disk disease and an MRI of her lumbar spine revealed a small right L4-5 disk protrusion. (Tr. 386). Dr. Ghavam advised Plaintiff to "seriously think about a weight loss program" such as diet and exercise and that losing weight would help with her back and neck problems. (*Id.*).

On December 12, 2005, Dr. Vijay Jampala performed a consultative evaluation of Plaintiff. (Tr. 393-99). An examination of Plaintiff's hips, knees and ankles was normal. X-rays of the lumbar spine confirmed mild disk space narrowing at L4-L5 without much degenerative joint disease changes. (Tr. 394). Dr. Jampala reported that Plaintiff has significant subjective chronic low back pain syndrome, but has no neurological deficit and no obvious spinal deformity. (Tr. 394). Dr. Jampala also noted that some of Plaintiff's low back pain may be due to her obesity. (*Id.*). Dr. Jampala completed a Medical Source Opinion form in which he indicated that Plaintiff could stand,

6

walk and sit for 15 minutes at one time for a total of four hours a day, except for sitting, which she could do for a total of six hours a day. (Tr. 397). Plaintiff could constantly push and pull with her arms, as well as perform other actions such as handle, finger, feel, talk, hear, and reach overhead. (Tr. 398). Plaintiff could frequently push and pull with her legs, as well as climb, balance, kneel, crouch, crawl, be around moving mechanical parts, work in high exposed places, and drive automotive equipment. (*Id.*). She could only occasionally stoop. (*Id.*).

On January 9, 2006, Plaintiff returned to Dr. Cheatham for a refill of her Lortab medications. (Tr. 402). When Dr. Cheatham saw her again on January 24, 2006, he opined that Plaintiff needed therapy, and that pain medications were not the solution due to their addictive nature. He reported that Plaintiff should continue physical therapy at home. (*Id.*).

At the request of Plaintiff's attorney, Dr. Julie Hay performed an evaluation and completed a Physical Capacities Evaluation of Plaintiff on February 6, 2006. (Tr. 418-28). Plaintiff reported that she was independent with all of her daily activities. (Tr. 419). Plaintiff further reported performing light housework, cooking, and laundry with some help from her husband. (*Id.*). She also reported having to take frequent breaks approximately every 10-15 minutes throughout the day. (*Id.*). Plaintiff reported some pain squattting and bending, though she did not need assistance. (Tr. 421). Range of motion of Plaintiff's cervical spine was within normal limits and she did not have any spasms. Range of motion of her lumbar spine was also within normal limits, but she reported pain with flexion. (*Id.*). Plaintiff's posture was normal and her spine appeared normal with normal curvature, but she was tender to palpation in her lower back. (Tr. 422). Dr. Hay's diagnoses were low back pain, neck pain, and hand numbness and tingling. (*Id.*).

In her Medical Source Statement, Dr. Hay noted that based on Plaintiff's history, she seemed to have significant limitations related to her low back pain, but no MRI reports were provided and only by Plaintiff's own report were there abnormalities including scoliosis and degenerative disease. (Tr. 422). Dr. Hay reported that the claimant seemed to have exhausted her methods of conservative treatments but also acknowledged that "her exam was not consistent with the severity of her reported history." (*Id.*). Dr. Hay noted that Plaintiff did not have many limitations in her range of motion and her strength was intact throughout, concluding, "[t]herefore I cannot find any evidence of limitations based on her exam today." (*Id.*). Dr. Hay did note that based on the history that Plaintiff provided, she probably would have difficulty performing activities she had done in the past, particularly those requiring heavy lifting. (*Id.*). With regard to Plaintiff's intermittent neck pain, Dr. Hay noted it does not seem to limit her in any of her activities, and reported that Plaintiff's hand numbness was suggestive of Carpel Tunnel Syndrome but did not test her for it. (*Id.*). In her Physical Capacities Evaluation, Dr. Hay indicated that Plaintiff could stand/walk and sit each for a total of four to six hours a day with frequent breaks. She noted that Plaintiff would have limitations with bending and stooping, but would likely be able to do those activities only occasionally. (Tr. 423-24). Dr. Hay also completed a Clinical Assessment of Pain in which she indicated that Plaintiff's pain appeared to be present to such an extent as to be distracting from the adequate performance of daily activities or work and that physical activities such as walking, standing and bending increased her pain level, but not to such an extent as to prevent adequate functioning in such tasks. (Tr. 425). Dr. Hay concluded that Plaintiff has an underlying medical condition consistent with the pain she experiences. (Tr. 426).

8

## II.    ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work.  The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 24, 2002, the alleged onset date of disability.  (Tr. 19, 29).  The ALJ determined that Plaintiff has a

severe combination of impairments of mild degenerative disk disease and morbid obesity. (Tr. 29). However, the ALJ found that Plaintiff's impairments, considered alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 of the Guidelines. (*Id.*). According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (Tr. 25-26). The ALJ determined that Plaintiff retains the residual functioning capacity to perform sedentary to light exertional work with additional limitations. (Tr. 27). He found that Plaintiff is unable to perform any of her past relevant work. (Tr. 30).

The ALJ called a vocational expert to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 478-79, 491-95). The vocational expert testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 492). Based on the vocational experts's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of decision. (Tr. 30).

## III.   Plaintiff's Arguments for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed, or in the alternative, remanded for further consideration. (Doc. # 9, at 11). Plaintiff asserts that this court should grant relief because the ALJ's conclusions were not based on substantial evidence and he did not follow the proper legal standards. (*Id.*, at 2). Specifically, Plaintiff argues that the ALJ did not

properly apply the pain standard and did not properly consider Plaintiff's impairments in combination.

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42, U.S.C., §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.     **Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments

for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on

substantial evidence and applied the proper legal standards.

Plaintiff's first argument is that the ALJ did not properly evaluate the effect of Plaintiff's pain

on her ability to work.  The court finds that the ALJ properly analyzed Plaintiff's complaints of pain

under the pain standard. The standard for subjective complaints of pain or other symptoms requires

the following:

> (1) evidence of an underlying medical condition and either (2) objective medical
> evidence that confirms the severity of the alleged pain arising from that condition or
> (3) that the objectively determined medical condition is of such severity that it can
> be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. § 416.929.[1]  Although

such evidence is itself sufficient for a finding of disability, the ALJ may elect not to credit a

claimant's subjective complaints.  *See Holt*, 921 F.2d at 1223.  If the ALJ discredits a claimant's

subjective description of their condition, "[a] clearly articulated credibility finding with substantial

supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67

F.3d 1553, 1562 (11th Cir. 1995).  Such a finding does not require the use of thaumaturgic phrases;

all that is required is a clearly supported credibility determination.  *See id.*  However, the ALJ must

---

[1] The Regulations provide that, when the medical evidence shows a medically determinable impairment that could reasonably be expected to produce a claimant's symptoms, evidence other than objective medical evidence will also be considered in evaluating a claimant's subjective symptoms.  Relevant factors to be considered include:  (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication; and (6) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

12

explicitly discredit the testimony and must articulate sufficient reasons for doing so.  *See Hale v.*
*Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *see also* Social Security Ruling 96-7p ("The
determination or decision must contain specific reasons for the finding on credibility, supported by
the evidence in the case record, and must be sufficiently specific to make clear to the individual and
to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the
reasons for the weight . . . .").

The ALJ set out the pain standard in his decision, as well as other factors relevant to the
evaluation of symptoms.  (Tr. 25).  The ALJ found that the evidence fulfilled the first part of the pain
standard test but that it did not meet either prong of the second part.  (*Id.*).  The ALJ clearly
articulated his reasons for discrediting the Plaintiff's pain testimony, stating:

> There is no objective clinical evidence of any condition(s) that either singly, or in
> combination, could reasonably be expected to produce the level of pain, sleep
> disturbances, fatigue, and other symptoms and limitations that the claimant alleges
> preclude her from working. Such allegations are also inconsistent with evaluation of:
> 1) the claimant's daily activities; 2) the location, duration, frequency and intensity of
> the symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type,
> dosage, effectiveness, and side effects of any medications that the claimant takes or
> has taken...; 5) treatment, other than medication, received for relief of symptoms; 6)
> any measures other than treatment used to relieve symptoms, and 7) other factors
> concerning the claimant's functional limitations and restrictions due to any
> symptoms.

(Tr. 25-26).  The ALJ elaborated on these enumerated factors, citing Plaintiff's medical history to
support his conclusions.  (Tr. 26).  The ALJ referred to Plaintiff's medical examinations, MRI
reports, and physical therapy, along with Plaintiff's own testimony regarding her daily activities, in
noting that "the treatment she has received has been essentially routine and conservative in nature
and has been generally successful in controlling her symptoms." (*Id.*).  Thus, the court finds no error
in the ALJ's application of the pain standard.

Plaintiff next argues that while the ALJ reported her weight throughout his decision and determined that obesity was a severe impairment, he did not provide an analysis of the impact of her weight in particularly when considered in combination with her other impairments.  (Doc. # 9, at 9-10).  Plaintiff argues that, despite the instructions of the remand order of the Appeals Council that the ALJ properly consider Plaintiff's obesity, the ALJ failed to properly do so as required by Social Security Ruling 02-01p. (*Id.*; *see* Tr. 68-70).

The ALJ did note Plaintiff's weight and obesity throughout his decision.  (Tr. 20-26).  In fact, the ALJ determined Plaintiff's obesity to be a severe impairment at Step Two of the sequential evaluation, 20 C.F.R. §§ 404.1520(c), 416.920(c).  (Tr. 20, 25).  The ALJ found at Step Three that Plaintiff's obesity, while a "severe" impairment, did not meet or equal the severity criteria of a listed impairment, 20 C.F.R. §§ 404.1520(d), 416.920(d).  (Tr. 25).  The ALJ highlighted the fact that although Plaintiff's doctors had repeatedly connected Plaintiff's pain to her obesity, and had advised her to lose weight, Plaintiff "failed to undergo any recommended weight loss program." (Tr. 26).  Additionally, at Step Four the ALJ determined that Plaintiff's obesity, along with her other impairments, limited Plaintiff to a residual functional capacity of sedentary to light work with limitations.  (Tr. 27).

It is the functional limitations imposed by the condition, not the mere diagnosis, that determines disability.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (11th Cir. 1988).  Medical findings in the record from Dr. Jampala indicate that despite Plaintiff's diagnosis of obesity, she was able to perform work-related activities such as standing, sitting, walking, lifting, handling objects, talking and hearing.  (Tr. 23).  Referring to Plaintiff's obesity, the ALJ stated that "[t]here is nothing in the record that shows this impairment poses any significant limitations on the claimant's ability to

14

perform work-related activities." (Tr. 26).  Without evidence demonstrating functional limitations

imposed by Plaintiff's obesity, Plaintiff failed to establish she had work-related limitations due to

her obesity.

Plaintiff also claims that the ALJ failed to consider the combined effects of obesity with other

impairments.  Social Security regulations require the ALJ to consider the combined effects of all

impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a
> sufficient medical severity that such impairment or impairments could be the basis
> of eligibility under the law, we will consider the combined effect of all of your
> impairments without regard to whether any such impairment, if considered
> separately, would be of sufficient severity.  If we do find a medically severe
> combination of impairments, the combined impact of the impairments will be
> considered throughout the disability determination process.  If we do not find that
> you have a medically severe combination of impairments, we will determine that you
> are not disabled.

20 C.F.R. § 404.1523; *see Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).  When a

combination of impairments exists, a Plaintiff may be found disabled even though none of the

individual impairments by itself would be disabling.  *See Caulder v. Bowen*, 791 F.2d 872, 880 (11th

Cir. 1986).  Reviewing courts can determine that Plaintiff's impairments were considered in

combination from statements made by the ALJ.  *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir.

1986) (holding that it was clear that impairments were considered in combination when ALJ stated

that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not

suffering  from any impairment, *or a combination of impairments* of sufficient severity to prevent

him from engaging in any substantial gainful activity for a period of at least twelve continuous

months.") (internal quotations omitted).

The ALJ's opinion in this case comprehensively and clearly sets out the medical evidence regarding all of Plaintiff's alleged impairments.  (Tr. 19-25).  The ALJ specifically stated that he considered Plaintiff's impairments in combination. (Tr. 25).  Thus, the court finds that the ALJ properly considered Plaintiff's impairments in combination when he determined that Plaintiff's impairments did not meet or equal one of the impairments in Appendix 1, Subpart P, Regulation No. 4, and when he determined that Plaintiff retained the residual functional capacity to perform sedentary to light work with limitations.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____12th_____ day of September, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

16